## 62436. TALLMAN POOLS OF GEORGIA, INC. v. FELLNER.

BIRDSONG, Judge.

Tallman Pools appeals the verdict and judgment against it arising out of breach of contract to install a swimming pool in the back yard of the appellee Fellner. *Held:*

1. This case must be reversed for harmful error in the charge of the court. The contract between the parties provided that "Project [is] to start on or about 12 Dec. '77 (permit permitting) and complete 15 Feb. '78 *weather permitting.*" (Emphasis supplied.) The appellant's agent, who inspected Fellner's property and negotiated the contract, testified that the completion of a pool installation is dependent upon clement weather conditions; that the ground must be sufficiently dry to enable Tallman to dig and install a pool; that while in summer the sun and heat might sufficiently dry the ground within a day of rain, in winter a longer period is generally needed to dry the ground sufficiently to permit installation, and that this was particularly true in this case because Fellner's yard is so steeply sloped and shaded. This agent stated that it would be almost impossible to predict winter weather so as to promise a specific closing date and that this problem was discussed with the appellee

Fellner and was the very reason that the time of performance was stated in the contract as "weather permitting."

The evidence showed as follows: Appellee Fellner's house is a three-story structure situated on a steep slope and the backyard lot is thickly wooded and traversed by a small creek. On or about December 9 or 16, 1977, appellant's crew arrived at appellee's lot to begin work. They drove a 23,000 pound crawler tractor with backhoe down the slope beside the house. When the machine turned sideways to cross over what was apparently an underground spring or small drainoff, the machine slid into the ditch and became mired in mud. Appellant's workmen shoveled mud and "worked back and forth" the rest of the day but the tractor was stuck fast and eventually broke its hydraulic rod. The workmen worked several more days to extricate the tractor but finally had to hire a wrecker company to wench the tractor out of the hole. The tractor was hauled away because of its broken rod and the weather conditions.

By this time the Fellners' backyard was a mess. Tallman's agent testified that it rained a good deal, up to seven inches, during the remainder of the projected completion time. During this time, he spoke with Mr. Fellner two or three times by telephone and explained the weather problems and also required Mr. Fellner to remove several large felled trees so as to provide access as required of Fellner by the contract. Fellner agreed that he did communicate with Tallman's agent but described Tallman's response as "evasive." There was no testimony by Fellner, who was the plaintiff below, as to what the weather was during this time or that the "weather permitted." By January, the Fellners were thoroughly sick of the mess and disillusioned. As the completion date was fast approaching and no further work had been done, Mr. Fellner decided that there was an anticipatory breach of the contract; on February 15, appellant was notified by letter dated February 13, 1978 that the contract was terminated and rescinded. Tallman's agent testified that he wanted to build the pool and would have finished the project, weather permitting, and if the felled trees were removed as required by the contract.

The court charged the jury only that if it found time was the essence of the contract, the jury would be entitled to regard the party who failed to comply with the time limitation as having breached the contract. This could be construed by the jury as a direction by the court to find for the plaintiff if the pool was not completed on a certain date. We perceive, however, that if time was the essence of the contract, the contractual provision conditioning the completion time as "weather permitting" was so much a part of the essence of this contract as to require Fellner to show prima facie not only that the

appellant did not complete the project on February 15 but that the weather permitted. The appellant did not complain that the charge implied appellant had made an unconditional promise to finish the pool by February 15, but appellant did complain of the failure to charge the defenses of impossibility of performance and act of God. The trial court charged as to the appellant's liability for an anticipatory breach of contract "without legal excuse," but did not give any hint as to what might constitute a legal excuse, and, though requested to do so, did not advise the jury that impossibility of performance is a legal excuse. Since the charge ignored the fact that time for completion was conditioned on weather permitting in the first place, the least the court could have done was charge the defenses of impossibility of performance and act of God. The evidence raised that issue without question, and the failure to so advise the jury was harmful *(Fowler v. Gorrell,* 148 Ga. App. 573 (251 SE2d 819)). Moreover, we think the charge as a whole was unclear and not adjusted to the evidence and contentions of the parties. The jury should have been instructed that if it found the contract on its face required Fellner to provide access and remove the felled trees, as opposed to the "stumps" which Tallman was required to bury, and if Fellner's failure to do so caused or contributed to Tallman's failure to perform or caused or contributed to any damages, their verdict should be adjusted accordingly. Responsibility for removal of trees was a substantial issue in the evidence and the charge gave the jury not a clue as to how to resolve it or how it figured in the case.

2. The trial court did not err in overruling appellant's motion for directed verdict for any reason. Even if the contract clearly and expressly required Fellner to provide access and remove obstructing trees, which Fellner admitted he did not do, this fact does not entitle Tallman to a directed verdict on the issue of breach of contract, as it was not proved to be the sole cause of any damages or of the breach, if there was one. The trial court did not err in excluding defense witness testimony that Tallman was a very big company (which was offered to disprove bad faith by showing that Tallman did not need to abandon this contract to "cut its losses"), as this testimony was remote and speculative and did not tend to prove Tallman acted in good faith in its performance of this particular contract. Appellant's enumerations concerning the award of damages is without merit. The award was within the evidence, there is no indication that it was based on improper elements, and no objection was made to the damages charge. Appellant's enumerations based on the general grounds we do not consider, as we reverse the case.

*Judgment reversed. Shulman, P. J., and Sognier, J., concur.*

DECIDED NOVEMBER 20, 1981 —
REHEARING DENIED DECEMBER 15, 1981.

*Paul S. Weiner,* for appellant.
*Richard N. Hubert, Nicholas Jellins,* for appellee.